IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JASON L.,[1] | ) |
| | ) |
| Plaintiff, | ) |
| | ) No. 19 C 6291 |
| v. | ) |
| | ) Magistrate Judge |
| ANDREW SAUL, Commissioner of | ) Maria Valdez |
| Social Security, | ) |
| | ) |
| Defendant. | ) |
| | ) |

## MEMORANDUM OPINION AND ORDER

This action was brought under 42 U.S.C. § 405(g) to review the final decision of the Commissioner of Social Security denying Plaintiff Jason L.'s claims for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). The parties have consented to the jurisdiction of the United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). For the reasons that follow, Plaintiff's request to reverse or remand the agency decision is denied, and the Commissioner's motion for summary judgment [Doc. No. 20] is granted.

---

[1] In accordance with Internal Operating Procedure 22 – Privacy in Social Security Opinions, the Court refers to Plaintiff only by his first name and the first initial of his last name.

## BACKGROUND

### I. PROCEDURAL HISTORY

On October 16, 2014, Plaintiff filed claim for DIB and SSI, alleging disability since April 14, 2014 due to back pain. The claim was denied initially and upon reconsideration, after which he timely requested a hearing before an Administrative Law Judge ("ALJ"), which was held on August 22, 2017. Plaintiff personally appeared and testified at the hearing and was represented by counsel. A vocational expert also testified.

On August 28, 2018, the ALJ denied Plaintiff's claim for benefits, finding him not disabled under the Social Security Act. The Social Security Administration Appeals Council then denied Plaintiff's request for review, leaving the ALJ's decision as the final decision of the Commissioner and, therefore, reviewable by the District Court under 42 U.S.C. § 405(g). *See Haynes v. Barnhart*, 416 F.3d 621, 626 (7th Cir. 2005).

### II. ALJ DECISION

Plaintiff's claim was analyzed in accordance with the five-step sequential evaluation process established under the Social Security Act. *See* 20 C.F.R. § 404.1520(a)(4). The ALJ found at step one that Plaintiff had not engaged in substantial gainful activity since his alleged onset date of April 14, 2014. At step two, the ALJ concluded that Plaintiff had the following severe impairments: degenerative disc disease, diabetes mellitus, enlarged spleen, obesity, knee arthralgia, autoimmune thrombocytopenia, and cirrhosis. The ALJ concluded at

step three that his impairments, alone or in combination, do not meet or medically equal a Listing. Before step four, the ALJ determined that Plaintiff retained the Residual Functional Capacity ("RFC") to perform sedentary work with the following additional limitations: standing or walking no more than thirty minutes at a time, for two total hours in a workday; sitting no more than two hours at a time, for six hours in a workday; never climbing ladders, topes, or scaffolds; no exposure to unprotected heights; occasionally performing other postural activities; occasional exposure to moving mechanical parts, and occasional operation of a commercial motor vehicle; using a cane for ambulating more than fifty feet, while using his free hand to carry objects; using bilateral foot controls frequently; and frequent exposure to humidity, wetness, dust, odors, fumes, and pulmonary irritants, as well as extreme cold, extreme heat, and vibrations.

At step four, the ALJ concluded that Plaintiff would be able to perform his past relevant work as a security guard for a condo association. Further, at step five, based upon the VE's testimony and Plaintiff's age, education, work experience, and RFC, the ALJ found that Plaintiff can perform other jobs existing in significant numbers in the national economy, leading to a finding that he is not disabled under the Social Security Act.

## **DISCUSSION**

### I.     **ALJ LEGAL STANDARD**

Under the Social Security Act, a person is disabled if she has an "inability to engage in any substantial gainful activity by reason of any medically determinable

3

physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(a). In order to determine whether a Plaintiff is disabled, the ALJ considers the following five questions in order: (1) Is the Plaintiff presently unemployed? (2) Does the Plaintiff have a severe impairment? (3) Does the impairment meet or medically equal one of a list of specific impairments enumerated in the regulations? (4) Is the Plaintiff unable to perform her former occupation? and (5) Is the Plaintiff unable to perform any other work? 20 C.F.R. § 416.920(a)(4).

An affirmative answer at either step 3 or step 5 leads to a finding that the Plaintiff is disabled. *Young v. Sec'y of Health & Human Servs.*, 957 F.2d 386, 389 (7th Cir. 1992). A negative answer at any step, other than at step 3, precludes a finding of disability. *Id.* The Plaintiff bears the burden of proof at steps 1-4. *Id.* Once the Plaintiff shows an inability to perform past work, the burden then shifts to the Commissioner to show the Plaintiff's ability to engage in other work existing in significant numbers in the national economy. *Id.*

## II.    JUDICIAL REVIEW

Section 405(g) provides in relevant part that "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). Judicial review of the ALJ's decision is thus limited to determining whether the ALJ's findings are supported by substantial evidence or based upon legal error. *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir.

2000); *Stevenson v. Chater*, 105 F.3d 1151, 1153 (7th Cir. 1997). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Skinner v. Astrue*, 478 F.3d 836, 841 (7th Cir. 2007). An ALJ's decision should be affirmed even in the absence of overwhelming evidence in support: "whatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high. Substantial evidence . . . 'more than a mere scintilla.' . . . It means – and means only – 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (citations omitted). This Court may not substitute its judgment for that of the Commissioner by reevaluating facts, reweighing evidence, resolving conflicts in evidence, or deciding questions of credibility. *Skinner*, 478 F.3d at 841; *see also Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008) (holding that the ALJ's decision must be affirmed even if "'reasonable minds could differ'" as long as "the decision is adequately supported") (citation omitted).

However, even under this relatively lenient standard, an ALJ is not absolved of her duty to support the decision with record evidence. *See Meuser v. Colvin*, 838 F.3d 905, 910 (7th Cir. 2016) ("We will uphold an ALJ's decision if it is supported by substantial evidence, but that standard is not satisfied unless the ALJ has adequately supported his conclusions."). The ALJ is not required to address "every piece of evidence or testimony in the record, [but] the ALJ's analysis must provide some glimpse into the reasoning behind her decision to deny benefits." *Zurawski v.*

5

*Halter*, 245 F.3d 881, 889 (7th Cir. 2001). In cases where the ALJ denies benefits to a Plaintiff, "he must build an accurate and logical bridge from the evidence to his conclusion." *Clifford*, 227 F.3d at 872. The ALJ must at least minimally articulate the "analysis of the evidence with enough detail and clarity to permit meaningful appellate review." *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 351 (7th Cir. 2005); *Murphy v. Astrue*, 496 F.3d 630, 634 (7th Cir. 2007) ("An ALJ has a duty to fully develop the record before drawing any conclusions . . . and must adequately articulate his analysis so that we can follow his reasoning . . . ."); *see Boiles v. Barnhart*, 395 F.3d 421, 425 (7th Cir. 2005).

Where conflicting evidence would allow reasonable minds to differ, the responsibility for determining whether a Plaintiff is disabled falls upon the Commissioner, not the court. *See Herr v. Sullivan*, 912 F.2d 178, 181 (7th Cir. 1990). However, an ALJ may not "select and discuss only that evidence that favors his ultimate conclusion," but must instead consider all relevant evidence. *Herron v. Shalala*, 19 F.3d 329, 333 (7th Cir. 1994).

### III. ANALYSIS

Plaintiff argues that the ALJ's decision was in error because: (1) he improperly weighed the medical opinions; (2) he failed to factor Plaintiff's morbid obesity into his RFC assessment; (3) the RFC did not include all of Plaintiff's documented exertional and postural limitations, as well as his ability to stay on task; and (4) his evaluation at steps 4 and 5 was in error.

A.  **Opinion Evidence**

Plaintiff argues that the ALJ erred in evaluating the medical opinion evidence, specifically by giving more weight to the opinion of non-examining physician Dr. Nimmagadda than to that of his treating physician Dr. Nagaj.

1. *Dr. Nagaj's Opinion*

Dr. Nagaj began treating Plaintiff on June 2, 2015 and completed a Musculoskeletal Defects Report provided by counsel on November 9, 2015. Dr. Nagai noted Plaintiff's diagnosis of lower back pain, obstructive sleep apnea, and fat tissue in the spinal cord, with signs and symptoms of muscle spasms, radiculopathy, impaired sleep, and numbness and tingling, along with pain in the lower back and right leg. Dr. Nagai stated that Plaintiff would need a cane to ambulate, and his pain would frequently affect his concentration and attention. He further concluded that Plaintiff could not work full-time in a sedentary position because he needed to alternate between sitting and lying down every thirty minutes, and he would be expected to be absent more than three times per month.

2. *Dr. Nimmagadda's Opinion*

After the hearing, the ALJ requested testimony through interrogatories from medical expert Dr. Nimmagadda, who received the medical record and a summary of Plaintiff's hearing testimony. In a medical source statement dated February 12, 2018, Dr. Nimmagadda opined that Plaintiff could occasionally lift and carry up to ten pounds, sit for two hours at a time for a total of six hours in an eight-hour workday, and stand or walk for thirty minutes at a time for a total of two hours in

7

an eight-hour workday; the use of a cane was medically necessary to ambulate, and he could walk only fifty feet without a cane; he could never climb ladders or scaffolds, but he could frequently balance and occasionally climb stairs and ramps, balance, stoop, kneel, crouch, and crawl. Plaintiff could never work around unprotected heights; occasionally work around moving mechanical parts and operate a motor vehicle; and frequently work around humidity, pulmonary irritants, extreme heat and cold, and vibrations.

### 3. *ALJ Analysis*

The ALJ gave Dr. Nagaj's opinion only some weight because it was not fully consistent with his own treatment notes. At his initial visit in June 2015, Dr. Nagaj found Plaintiff to be generally healthy, with pain in muscles and joints, but no limitation of range of motion and no paresthesias or numbness. The treatment plan included moist heat, diet, and exercise; and he was referred to a pain specialist. Plaintiff returned to Dr. Nagaj in August to obtain refills on his pain medication. Plaintiff was again found to be generally healthy, with no change in strength or exercise tolerance; pain in muscles and joints; no limitation of range of motion, except tenderness and limited range of motion in the lumbosacral area; and no paresthesias, numbness, or peripheral neuropathy. The treatment plan again included moist heat, diet, and exercise.

The ALJ explained that it was unclear from Dr. Nagaj's clinical findings and treatment plan why he concluded that Plaintiff was so severely limited that he could not work at the sedentary level and would miss at least three days of work per

8

month. The ALJ did credit the report's statement that Plaintiff needed the use of a cane, finding that it was supported by the record.

Under the "treating physician rule,"[2] an ALJ must give controlling weight to a treating physician's opinion if the opinion is both "well-supported" and "not inconsistent with the other substantial evidence" in the case record. 20 C.F.R. § 404.1527(c); *see Scott v. Astrue*, 647 F.3d 734, 739 (7th Cir. 2011). The ALJ must also "offer good reasons for discounting" the opinion of a treating physician. *Campbell v. Astrue*, 627 F.3d 299, 306 (7th Cir. 2010) (internal quotations omitted); *Scott*, 647 F.3d at 739; *see also Israel v. Colvin*, 840 F.3d 432, 437 (7th Cir. 2016) ("A contradictory opinion of a non-examining physician does not, by itself, suffice as a justification for discounting the opinion of the treating physician."). The regulations require the ALJ to consider a variety of factors, including: (1) the length, nature, and extent of the treatment relationship; (2) the frequency of examination; (3) the physician's specialty; (4) the types of tests performed; and (5) the consistency and support for the physician's opinion. *See* 20 C.F.R. § 404.1527(c). Even if a treater's opinion is not given controlling weight, an ALJ must still determine what value the assessment does merit. *Scott*, 647 F.3d at 740; *Campbell*, 627 F.3d at 308.

---

[2] The Social Security Administration has modified the treating-physician rule to eliminate the "controlling weight" instruction. *See* 20 C.F.R. § 404.1520c ("We will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) ..., including those from your medical sources."). However, the new regulations apply only to disability applications filed on or after March 27, 2017. *See* 20 C.F.R. § 404.1527 ("For claims filed (see § 404.614) before March 27, 2017, the rules in this section apply."). Plaintiff's application in this case was filed in 2014, and therefore the ALJ was required to apply the former treating physician rule.

9

Plaintiff contends that in evaluating Dr. Nagaj's opinion, the ALJ improperly cherry-picked benign findings and focused too much on his conservative treatment. The Court concludes that substantial evidence supports the ALJ's decision not to give controlling weight to Dr. Nagaj's assertions about Plaintiff's allegedly extreme limitations, because the opinion is not consistent with any other record evidence, including Dr. Nagaj's own treatment notes. *See Skarbek v. Barnhart*, 390 F.3d 500, 503 (7th Cir. 2004) ("An ALJ may discount a treating physician's medical opinion if it is inconsistent with the opinion of a consulting physician, . . . or when the treating physician's opinion is internally inconsistent, . . . as long as he 'minimally articulate[s] his reasons for crediting or rejecting evidence of disability.'") (citations omitted).

Plaintiff points to no clinical notes or medical evidence demonstrating the basis for Dr. Nagaj's assessment that he cannot perform the physical requirements of a sedentary job or that he would miss more than three days of work per month. He argues that other medical providers supported Dr. Nagaj's findings, but evidence of pain, a limp, or limited flexion does not provide a rationale for concluding that Plaintiff is wholly disabled. The issue on appeal is not whether Plaintiff has any pain or impairments but whether his proven impairments prevent him from performing work at even the sedentary level. It is not enough for Plaintiff to say that he has pain or difficulty sitting for long periods; he needs to offer evidence demonstrating that his pain prevents him from doing so. The only evidence in the record that Plaintiff cannot meet the sitting or attendance requirements of full-time

sedentary employment is Dr. Nagaj's opinion, but that opinion fails to explain why Plaintiff's condition was dramatically more disabling in November than it was described in notes from visits in June and August. *See Pytlewski v. Saul*, 791 F. App'x 611, 615 (7th Cir. 2019) (unpublished decision); *see also McFadden v. Berryhill*, 721 F. App'x 501, 505 (7th Cir. 2018 (unpublished decision) (concluding that "the ALJ reasonably demanded from [the treater] some explanation for finding limitations so much more severe than those recognized by other doctors, and she was entitled to discount his opinion for not providing that explanation").

The ALJ's decision to give greater weight to the opinion of Dr. Nimmagadda was also supported by substantial evidence. The ALJ noted that his was the only opinion that was based on the entire record, including Plaintiff's hearing testimony, and it was consistent with the medical evidence and other opinions in the record, save Dr. Nagaj's finding of extreme limitations. The ALJ was not concerned about Dr. Nimmagadda's failure to note Plaintiff's diabetes because there was no indication that diabetes caused any additional limitations. And contrary to Plaintiff's suggestion, the ALJ was not required to agree with all of Dr. Nimmagadda's functional opinions in forming the RFC. *See Schmidt v. Astrue*, 496 F.3d 833, 845 (7th Cir. 2007) ("[A]n ALJ must consider the entire record, but the ALJ is not required to rely entirely on a particular physician's opinion or choose between the opinions any of the claimant's physicians.").

### B. Obesity

Although Plaintiff had lost over 100 pounds in the year before the hearing, he weighed as much as 440 pounds on a 73.5-inch frame and generally had a BMI that was well into the 50s. He contends that the ALJ's RFC failed to adequately consider the effects of his morbid obesity, namely a decreased range of motion and difficulty sitting for long periods of time. Plaintiff further asserts that he requires frequent position changes that may be inconsistent with the requirements that he be on-task at least ninety percent of the time. The ALJ, however, expressly considered the effects of Plaintiff's obesity in connection with his back pain and range of motion, and Plaintiff does not explain how the sedentary RFC does not accommodate limitations caused by obesity. *See Hisle v. Astrue*, 258 F. App'x 33, 37 (7th Cir. 2007) (unpublished decision) ("Plaintiff must articulate how her obesity limits her functioning and exacerbates her impairments. . . . This court has repeatedly excused the harmless error of an ALJ who fails to explicitly address a Plaintiff's obesity but arrives at a final decision after reviewing the medical opinions of physicians familiar with the Plaintiff's obesity.").

Plaintiff also does not demonstrate that postural changes will keep him off task. Dr. Nagaj's opinion that he will occasionally need to lie down was properly discounted, and Plaintiff offers no other proof that he requires positional changes that will affect his ability to work at the sedentary level.

## C. Other Limitations

Plaintiff contends that the ALJ's RFC did not accommodate all of his postural limitations, including sitting, walking, stooping, bending, as well as deficits in concentration. The RFC, however, was supported by all the medical opinions in the record except for Dr. Nagai's, discussed above. Plaintiff's pain and decreased range of motion were accommodated in the sedentary RFC, and Plaintiff does not point to specific evidence of any other functional limitations that the ALJ did not consider or accommodate. The ALJ's findings were supported by substantial evidence; it is irrelevant that another ALJ may have weighed the evidence differently.

## D. Steps 4 and 5

Plaintiff first argues that the ALJ erred at step 4 by finding that he could perform his past work, because the ALJ did not compare the RFC and the position function by function, and further that his prior job as a gate guard is classified as light, not sedentary, in the Dictionary of Occupational Titles. As the Commissioner points out, however, counsel did not object at the hearing to the vocational expert's classification of the guard job, so the argument is waived. In addition, Plaintiff's testimony establishes that despite the classification, the job as he generally performed it was within the limits of the sedentary RFC.

At step 5, Plaintiff contends that the ALJ erred in finding no disability, because he would be off task more than ten percent of the day due to positional changes, and the vocational expert opined that there were no jobs available to a person who was not on task at least ninety percent of the workday. But as discussed

above, Plaintiff offers no credited evidence or testimony establishing that he would require positional changes and that any such changes would keep him off task more than ten percent of the workday.

## **CONCLUSION**

For the foregoing reasons, Plaintiff's request to reverse or remand the agency decision is denied, and the Commissioner's motion for summary judgment [Doc. No. 20] is granted.

**SO ORDERED.**  **ENTERED:**

**DATE:    May 10, 2021**

						**HON. MARIA VALDEZ**
						**United States Magistrate Judge**